FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ SEP 29 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

WALTER MARTIN and ROSE MARTIN,

       Plaintiffs,

 -against-

THE CITY OF NEW YORK and THE NEW YORK
CITY POLICE DEPARTMENT,

       Defendants.

----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-cv-02862 (ENV)

**VITALIANO, D.J.**

On September 9, 2011, plaintiffs Walter and Rose Martin filed an amended complaint against the City of New York and the New York Police Department pursuant to 42 U.S.C. § 1983 alleging violations of their constitutional rights. Specifically, plaintiffs allege that their address was "negligently . . . entered into, and maintained . . ." in the NYPD's computer system as a "default address for criminal suspects," resulting in over 50 visits to plaintiffs' home by police officers in search of suspects. (Compl. ¶¶ 22, 24.) Plaintiffs allege that during each visit, the officers acknowledged that the visit was in error. They also state that they notified defendants more than once that their address had been visited in error, but the mistake was not corrected. (Id. ¶¶ 16-20.) Plaintiffs also allege that (1) the original data entry error, (2) defendants' refusal to correct the error, and (3) repeated police visits to plaintiffs' home were all the result of "defendants' negligent failure to adequately hire, train, supervise and/or retain competent staff." (Id. ¶¶ 25-27.) In addition to the § 1983 claim, plaintiffs allege several common law tort claims.

On December 9, 2011, defendants filed a letter requesting a pre-motion conference so they might seek leave to file a motion to dismiss the complaint. Because plaintiffs' complaint claimed violations of

§ 1983 arising from defendants' negligence, and negligence claims cannot support liability under § 1983, on January 5, 2012, the Court ordered plaintiff to explain why the motion to dismiss should not be granted. Plaintiffs' response to the Court's order provides nothing to suggest that the complaint's flaws can be cured. More specifically, in their response, plaintiffs claim that the complaint alleges conduct surpassing mere negligence because the officers involved acted "deliberate[ly] and intentional[ly]" in visiting plaintiffs' home to search for suspects. (Pl.'s Response to Court Order, Dkt. 9 at 1.) But the fact that the officers came with a purpose does not convert their error into an act of intentional wrongdoing. Nowhere in the complaint, nor in their response to the Court's January 5, 2012 order, do plaintiffs provide any fact suggesting that the officers visiting plaintiffs knew that, because of the data entry error, that there was an error in their dispatch; nor do they suggest that the officers committed any other deliberate wrongful acts. Indeed, the complaint's statement of facts attributes all of the harm-causing acts or omissions to defendants' "negligence."[1] Truly, that is all these allegations can support. But, because mere negligence cannot support a § 1983 action, the complaint must be dismissed. See Daniels v. Williams, 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983); Koulkina v. City of New York, 559 F. Supp. 2d 300, 316 (S.D.N.Y. 2008) ("[c]laims sounding in negligence . . . do not rise to the level of a constitutional deprivation . . . and, thus, cannot form the predicate of a Section 1983 claim") (citations omitted).

Moreover, plaintiffs fail to plausibly allege that the Fourth Amendment was violated on any of these visits. Nowhere in the complaint do plaintiffs aver that any officer ever actually entered much less searched their home. They simply claim that the police "loud[ly] knock[ed]" and "surround[ed] the

---

1 Though plaintiffs' statement of facts contains only allegations of negligence, the complaint does include a state law cause of action for gross negligence which alleges that defendants' "carelessness and negligence" was of "such a high degree" that defendants are "liable for gross negligence." (Compl. ¶ 37.) This barebones allegation does not rescue the complaint because "'conclusory and speculative assertions' to establish . . . gross negligence cannot suffice [under § 1983]" Pollack v. Nash, 58 F. Supp. 2d 294, 300-01 (S.D.N.Y. 1999) (quoting Gan v. City of New York, 996 F.2d 522, 536 (2d Cir.1993)).

house." (Pl.'s Response at 1.) That does not state a Fourth Amendment violation. See United States v. Reyes, 283 F.3d 446, 465 (2d Cir. 2002) ("[N]o Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors-such as driveways, walkways, or similar passageways") (internal quotation omitted); United States v. Pena Ontiveros, 547 F. Supp. 2d 323, 334-35 (S.D.N.Y. 2008) (agents seeking consent to search who approached front door of residence and went around to the back of the residence to knock on the doors and windows did not violate defendants' Fourth Amendment protections because defendants could not claim a reasonable expectation of privacy in those areas).

Beyond that, even if plaintiffs had pleaded a plausible claim of constitutional deprivation, plaintiffs fail to allege, much less plausibly, that the violation resulted from a municipal custom or policy, as § 1983 requires in suits against municipalities.[2] See Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978). The complaint contains only a generic statement alleging that defendants' "entire course of conduct was entered into and continued pursuant to the policies, regulations and decisions promulgated or adopted" by the NYPD. (Compl. ¶ 28.) Plaintiffs' response to the Court's order attempts to identify the policy resulting in the offending conduct by offering that "it is the policy of the municipality and its police department to send warrant squads and detectives to search for fugitives and suspects . . . that caused the 50-plus violations of the Plaintiffs' 4th Amendment rights." (Dkt. 9 at 1-2.) The offered statement is an ipse dixit for police work everywhere. What is missing is the plausible allegation of a specific policy which caused the deprivation of citizens' constitutional rights. See George v. Pathways to Housing, Inc., No. 10 Civ. 9505, 2012 WL 2512964, at *5 ( S.D.N.Y. Jun. 29, 2012) (plaintiff failed to state Monell claim where complaint did not identify a "specific municipal policy or custom" and offered only "vague and conclusory" assertions); see also Araujo v. City of New York, No.

---

2 NYPD is a nonsuable entity, see Jenkins v. City of New York, 478 F.3d 76, 93 n. 19 (2d Cir. 2007). Monell claims relating to NYPD may be brought solely against the City of New York.

08 CV 3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010)( "mere 'boilerplate' assertions that a municipality has such a custom or policy which resulted in a deprivation of the plaintiff's rights is insufficient to state a Monell claim"). There is no plausible allegation here that NYPD as a matter of policy or custom of dispatched police officers to premises knowing in advance that there was no basis to seek a fugitive at those premises.

Plaintiffs' allegations that defendants failed to properly train and supervise its officers are also insufficient to support a Monell claim, to the extent that they are offered to do so. Failure to train or supervise city employees may constitute an official policy or custom supporting Monell liability if the failure amounts to "deliberate indifference" to the rights of those with whom the city employees interact. City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197 (1989). In establishing deliberate indifference, the "operative inquiry is whether the facts suggest that the policymaker's inaction was the result of a conscious choice rather than mere negligence." Amnesty America v. Town of West Hartford, 361 F.3d 113, 128 (2d. Cir. 2004) (internal citations and quotations omitted). Thus, plaintiffs must show that "a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious . . . and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." Id. As they do three times in their complaint, plaintiffs state that the officers' conduct was the result of defendants "*negligent* failure to hire, train, supervise and/or retain competent staff." (Compl. ¶¶ 25-27 (emphasis added)). Because the complaint itself admits that the City was merely negligent in its hiring, training and supervision, it fails to state a Monell claim on that theory. Here, of course, there is also no factual allegation that even if the negligent conduct of the police had been deliberate, that it culminated in a violation of the Fourth Amendment. Plus, there are no plausible allegations that this unique conduct about which plaintiffs complain has ever been replicated anywhere else. Orphan, one-time constitutional violations cannot amount to a custom or policy upon which Monell

liability might be predicated.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is deemed made and granted, and plaintiffs' § 1983 claim is dismissed with prejudice. Having dismissed plaintiff s' only federal claim, the Court declines to exercise supplemental jurisdiction over any state law claim plaintiffs might arguably have alleged. 28U.S.C. § 1367(c)(3). Any such claim is dismissed without prejudice to its refilling in a state court of appropriate jurisdiction. In light of the forgoing, defendants' pre-motion conference request is denied as moot.

The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Brooklyn, New York
September 29, 2012

s/Eric N. Vitaliano

_____
ERIC N. VITALIANO
United States District Judge